```
         IN THE UNITED STATES DISTRICT COURT FOR
       THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

```
                               *
GLENN D. ALTSCHULD,
                               *
    Plaintiff,
                               *
       v.                          CIVIL NO.: WDQ-13-3680
                               *
CVS CAREMARK CORPORATION,
    et al.,                    *

    Defendants.                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM OPINION

Glenn D. Altschuld sued CVS Caremark Corporation ("Caremark"), Maryland CVS Pharmacy, LLC ("Maryland CVS"), and CVS Pharmacy, Inc. ("CVS Pharmacy"), (collectively, "CVS"), for wrongful discharge and other state law claims. ECF No. 1. Pending is CVS's motion to dismiss for failure to state a claim. ECF No. 14. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion to dismiss will be granted, and the complaint will be dismissed without prejudice.

I.   Background[1]

In 2007, Altschuld was hired by CVS[2] as a security/risk management officer. ECF No. 1 ¶ 8. He was assigned to a CVS store in Baltimore, Maryland as a "Loss Prevention Specialist II." Id. Altschuld received favorable ratings in each of his annual performance reviews. Id. ¶ 9.

On August 7, 2012, Altschuld was conducting camera surveillance of the CVS store and observed Larry Hunter[3] enter the store and examine condoms on the store's shelves. Id. ¶¶ 10-11. Altschuld and a trainee, Taronne Massey, then left the security office and began to conduct floor surveillance. See id. ¶¶ 10, 12. Altschuld saw Hunter attempt to remove the sealed packaging on a box of condoms; he stopped after he saw that Altschuld and Massey had left the office. See id. ¶ 12.

---

[1] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. See Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

[2] CVS is "engaged in the business of selling pharmaceutical drugs, other medicines and other goods and services." ECF No. 1 ¶ 5.

[3] When he entered the store, Hunter had previously been convicted for narcotics crimes and assault, and had pending charges for, inter alia, attempted murder and robbery with a deadly weapon. ECF No. 1 ¶ 27.

Massey walked up to Hunter and attempted to question him. *Id.* ¶ 15. Hunter began to walk away, ignoring Massey's instructions to stop. *Id.* Altschuld joined Massey in attempting to question Hunter.[4] *Id.* ¶ 16. Hunter became belligerent, cursed loudly, and moved toward Massey and Altschuld in a threatening manner. *Id.* ¶ 17. After Hunter yelled "Go ahead and do something," Altschuld instructed him several times to leave the store and threatened to call the police. *Id.* ¶ 18.

Hunter, who appeared to be under the influence of drugs or alcohol, refused to leave the store and continued to shout and move toward Altschuld. *Id.* ¶ 20. When Hunter was within two or three feet of Altschuld, he clenched his fists, extended his arm as if to punch, and jerked his body quickly toward Altschuld. *Id.* Altschuld feared for his safety and punched Hunter before Hunter, who was much larger than Altschuld, could strike him. *See id.* ¶ 21. Massey jumped between them, blocking Hunter from moving toward Altschuld again. *Id.* ¶¶ 22-23. Hunter continued to yell, curse, and threaten Altschuld. *Id.* ¶ 23. Altschuld told CVS staff to call the police. *Id.* ¶ 24.

Hunter, who had calmed somewhat, agreed to sit in the stockroom and wait for the police. *Id.* ¶ 25. He continued,

---

[4] "Altschuld's employer-issued loss prevention identification badge was displayed on his belt." ECF No. 1 ¶ 16.

however, to curse and threaten people in the store. *Id.* ¶ 26. The police arrived and arrested Hunter for trespassing--because he had been previously banned from the store for stealing--and second degree assault. *Id.* ¶ 27. During the investigation and prosecution of Hunter, the State's Attorney determined that Altschuld had acted in self-defense in punching Hunter and did not charge Altschuld for any crime. *See id.* ¶¶ 28, 39.

On August 15, 2012, Stephan Evans, CVS's Regional Cost Prevention Manager, called Altschuld and fired him for using force against Hunter. *See id.* ¶ 29. Altschuld told Evans that he had acted "in self-defense against a criminal who was threatening him and others in the store," and reminded Evans that Evans had previously authorized the use of force when necessary for self-defense,[5] but Evans refused to change his decision. *Id.* ¶ 30. On August 25, 2012, Altschuld spoke to CVS's Human Resources Business Partner, Dana Fitzgerald, who told Altschuld that she understood that Altschuld had been the aggressor and Hunter the innocent victim. *Id.* ¶ 32. After hearing Altschuld's description of what had occurred, Fitzgerald told him that "there is no right to self-defense in the workplace" and Altschuld still "'violate[d CVS's] anti-workplace violence policy.'" *Id.* ¶ 33.

---

[5] CVS's "Market Investigator Program Handbook" also authorized the use of appropriate force in self-defense or in defense of customers, employees, and others. ECF No. 1 ¶ 30.

4

Altschuld then sought review of the termination decision "in accordance with the CVS Caremark resolution process." *Id.* ¶ 37. In October 2012, CVS corporate employee C.J. Sanders called Altschuld to inform him that the termination decision had been upheld. *Id.* ¶¶ 37-38. Sanders stated that because CVS had never provided self-defense training to store investigators, Altschuld should not have used force against Hunter.[6] *Id.*

After Altschuld's termination, CVS knowingly made false statements to third parties about Altschuld, including "fabricated reasons for his discharge." *Id.* ¶ 47. These statements harmed Altschuld's reputation at his former workplace, within CVS and "the industry," and "with prospective employers." *Id.* ¶ 48.

On December 5, 2013, Altschuld sued the defendants under diversity jurisdiction,[7] alleging these Maryland state law

---

[6] Altschuld alleges that "as his internal complaint made its way up the chain of command," CVS and its agents "conspired to fabricate employer policies and procedures . . . to cover-up their known improper actions and protect management officials and [itself] from liability." ECF No. 1 ¶ 51.

[7] Diversity jurisdiction requires complete diversity--"there is no plaintiff and no defendant who are citizens of the same State"--and an amount in controversy exceeding $75,000. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388, 118 S. Ct. 2047, 2052, 141 L. Ed. 2d 364 (1998); 28 U.S.C. § 1332(a)(1). Altschuld is a citizen of Maryland and seeks more than $75,000 in damages. ECF No. 1 at 1, 9-12. Caremark and CVS Pharmacy are corporations with the citizenship of their state of incorporation, Delaware, and the state where their principal place of business is located, Rhode Island. *Id.* ¶¶ 2,

claims: (1) wrongful discharge (count one), (2) defamation (count two), and (3) conspiracy (count three). ECF No. 1. On January 17, 2014, CVS moved to dismiss the complaint. ECF No. 14. On February 14, 2014, Altschuld opposed the motion. ECF No. 18. On February 27, 2014, CVS replied. ECF No. 20.

II. Analysis

A. Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim

---

4; § 1332(c)(1); *Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011). CVS Maryland, a limited liability company, has the citizenship of its sole member, CVS Pharmacy. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004). Accordingly, there is complete diversity, and the Court has jurisdiction over this dispute.

advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. Altschuld's Claims

1. Wrongful Discharge

In Maryland, an at-will employee can raise a wrongful discharge claim only if his termination violated a "clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). To state a claim for wrongful discharge, a plaintiff must show: "(1) that [he] was discharged; (2) that the dismissal violated some clear mandate of public

7

policy; and (3) that there is a nexus between the defendant and the decision to fire [him]." *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 213 (Md. Ct. Spec. App. 1995). The complaint "must plead with particularity the source of the public policy and the alleged violation."[8] *Porterfield v. Mascari II, Inc.*, 142 Md. App. 134, 140, 788 A.2d 242, 245 (2002) *aff'd,* 374 Md. 402, 823 A.2d 590 (2003) (*citing Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 477, 588 A.2d 760 (1991)). Ordinarily the plaintiff must show the employer "violated the legal rule at issue[,] punished the employee for exercising some legal right[,]" or discharged the employee for "refusing to violate the law, or . . . the legal rights of some third party." *McIntyre v. Guild, Inc.*, 105 Md. App. 332, 344, 659 A.2d 398, 404 (1995).

CVS contends that Altschuld's wrongful discharge claim should be dismissed, because "he does not and cannot identify a

---

[8] To form the basis of a wrongful discharge action, "there must be a preexisting, unambiguous, and particularized pronouncement, by *constitution, enactment, or prior judicial decision,* directing, prohibiting, or protecting the conduct in question." *King v. Marriott Inter. Inc.*, 160 Md. App. 689, 702, 866 A.2d 895, 903 (2005) (internal quotations and citations omitted) (emphasis added); *see also Wholey v. Sears Roebuck*, 370 Md. 38, 52, 803 A.2d 482, 490 (2002) ("[W]e must strive to confine the scope of public policy mandates to clear and articulable principles of law . . . ."). Even if--as Altschuld contends--CVS's employee handbook authorized employees to use self-defense, it only establishes internal guidelines, not "clear and articulable principles of law," and thus cannot support a wrongful discharge claim. *See id.*; ECF No. 18 at 5.

clear mandate of public policy that Defendants allegedly violated in terminating his employment." ECF No. 14-1 at 4. In response, Altschuld argues that Md. Code Ann., Cts. & Jud. Proc. § 5-808 (West 2010) establishes a clear public policy authorizing "the justifiable use of force to defend oneself in one's home or place of business."[9] See ECF No. 18 at 4-5. CVS argues that this provision "does not clearly articulate a public policy against employers taking adverse employment actions against such individuals." ECF No. 20 at 3.

The complaint alleges that Altschuld was terminated "for exercising his lawful right or obligation to defend himself, customers and other employees," but fails to plead the source of this "public policy." See ECF No. 1 ¶ 43.[10] Moreover, § 5-808 does not support Altschuld's wrongful discharge claim.

Section 5-808(b) provides that:

> A person is not liable for damages for a personal injury or death of an individual who enters the

---

[9] In his opposition, Altschuld cites Md. Code Ann., Cts. & Jud. Proc. § 5-508 (West 2013), which creates immunity for "officer[s] or director[s] of a public drainage association or public watershed association." See ECF No. 18 at 5. In its reply, CVS supplies the proper citation to § 5-808, which addresses the "use of force against individuals" who enter a "dwelling or place of business." See ECF No. 20 at 2.

[10] See, e.g., Luy v. Baltimore Police Dep't, 326 F. Supp. 2d 682, 691-92 (D. Md. 2004) aff'd, 120 F. App'x 465 (4th Cir. 2005) (allegations that "defendants wrongfully terminated [plaintiff] in violation of public policy, by fabricating charges against him and not providing him with an opportunity to be heard" failed to "specifically identify any public policy").

      person's dwelling or place of business if: (1) The person reasonably believes that force or deadly force is necessary to repel an attack by the individual; and (2) The amount and nature of the force used by the person is reasonable under the circumstances.

Altschuld alleges that he used reasonable force against Hunter, and that he reasonably believed this use of force was necessary to protect himself from Hunter's attack. *See, e.g.*, ECF No. 1 ¶¶ 20-21, 28. Altschuld also alleges that he was discharged for using force against Hunter in self-defense. *See id.* ¶ 29.

    However, to avoid "open[ing] the floodgates of litigation," Maryland courts have "never held that every statute constitutes a clear mandate of public policy for purposes of the tort of wrongful discharge." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 497, 665 A.2d 297, 310 (1995). Unlike many statutes which Maryland courts have found to establish a clear mandate of public policy, § 5-808 does not prohibit employers from discharging employees for exercising a statutory right,[11]

---

[11] *See, e.g., Molesworth v. Brandon*, 341 Md. 621, 631-32, 672 A.2d 608, 613 (1996) (plaintiff discharged because she was a woman had established a wrongful discharge claim; although employer was not covered by the Fair Employment Practices Act--which prohibited employers from discharging employees because of sex--because he had less than 15 employees, employer was not exempted from the anti-discrimination policy language of the Act which expressly applied to *any* employer); *Wholey*, 370 Md. at 55, 803 A.2d at 491 (noting that discharging an employee because he filed a workmen's compensation claim violated a clear mandate of public policy embodied in a statute which "explicitly prohibited discharging an employee for filing workers' compensation claims") (citing, inter alia, *Finch v. Holladay-Tyler Printing, Inc.*, 322 Md. 197, 202, 586 A.2d 1275, 1278 (1991)).

10

nor does it prohibit retaliation against a person for engaging in a particular action, such as whistleblowing.[12] Further, although Maryland law "does provide a wrongful discharge cause of action for employees who are terminated because they perform their 'statutorily prescribed duty,'"[13] § 5-808 merely immunizes a user of force from liability in certain cases--it does not *mandate* that use of force. *See Milton v. IIT Research Inst.*, 138 F.3d 519, 522-23 (4th Cir. 1998) (finding whistleblower had failed to establish abusive discharge claim when he could not "point[] to [a] statute or other legal source that impose[d] on him a specific duty to report"); *see also Shapiro*, 105 Md. App. at 768-69, 661 A.2d at 215 ("Absent some clear *mandate, under which Shapiro actually could be held responsible for a breach of public policy*, we do not believe the 'policy' of protecting the privacy of parties under criminal investigation constitutes a sufficiently clear *mandate* to support Shapiro's wrongful discharge claim.") (emphasis added).

---

[12] *See Wholey*, 370 Md. at 57-63, 803 A.2d at 492-96 (statute that criminalized harming or retaliating against a person who reported a crime to law enforcement established a clear mandate of public policy to support a civil wrongful discharge claim for an employee discharged by his employer for reporting a crime to law enforcement).

[13] *See, e.g., Wholey*, 370 Md. at 64, 803 A.2d at 497 (*citing, inter alia, Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 98 Md. App. 123, 138, 632 A.2d 463, 470-71 (1993) (educator discharged for reporting child abuse when specifically required to do so by Maryland law had stated a wrongful discharge claim)).

Finally, although Maryland courts have not addressed whether § 5-808 creates a clear mandate of public policy, in *Bagwell*, decided before the passage of § 5-808, the Maryland Court of Appeals addressed whether an employee discharged for using self-defense could state a claim for wrongful discharge. 106 Md. App. at 500, 665 A.2d at 312. In *Bagwell*, the plaintiff--a hospital security officer--struck a violent patient on the head after the patient bit him.[14] *Id.* at 482, 665 A.2d at 303. Although the court ultimately denied the plaintiff's claim on other grounds,[15] it quoted with approval *McLaughlin v. Barclays Am. Corp.*, 95 N.C. App. 301, 306, 382 S.E.2d 836, 840 (1989) which held that an employer's discharge of an employee who used force in self-defense did not violate "public policy" because it did not implicate "that which has a tendency to be injurious to the public or against the public good."[16] *See id.*

---

[14] For purposes of determining whether the trial court properly awarded summary judgment to Bagwell's employer, the Court assumed that the plaintiff acted in self-defense. *Bagwell*, 106 Md. App. at 489, 665 A.2d at 306.

[15] The Court concluded that Bagwell was fired because his employer believed that he had struck the patient in retaliation for the patient biting him, not out of self-defense. *See Bagwell*, 106 Md. App. at 502, 665 A.2d at 313.

[16] *See also Adler*, 432 A.2d at 472 ("Public policy is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed, as it sometimes has been, the policy of the law, or public policy in relation to the administration of the law.") (internal quotations omitted).

at 501, 665 A.2d at 312 (internal quotation marks omitted); *see also Porterfield*, 142 Md. App. at 140-41, 788 A.2d at 245 ("The tort of wrongful discharge is aimed at particularly reprehensible conduct . . . .") (*citing Ewing v. Koppers Co.*, 312 Md. 45, 49, 537 A.2d 1173 (1988)). This reasoning provides no basis to conclude that the subsequent passage of § 5-808--which protects a user of self-defense from liability--would undermine or alter the *Bagwell* court's belief that discharging an employee for using force in self-defense does not implicate "public policy."

For purposes of the tort of wrongful discharge, it matters not whether discharging Altschuld for defending himself was "fair, justified, sensible, reasonable, or appropriate," only whether his discharge was "*wrongful, i.e.*, whether it violated a clear mandate of public policy." See *Shapiro*, 105 Md. App. at 769, 661 A.2d at 215 (emphasis in original).[17] Because Altschuld has failed to identify a clear mandate of public policy that CVS violated by discharging him, his wrongful discharge claim fails.

---

[17] *See also Beery v. Maryland Med. Lab., Inc.*, 89 Md. App. 81, 94, 597 A.2d 516, 523 (1991) ("[M]ere termination of employment does not give rise to a cause of action for abusive discharge. Since [appellant] was an 'at-will' employee, appellee had an absolute right to fire her for *no* reason or for *almost any* reason without incurring any liability for doing so.") (emphasis in original).

2. Defamation

CVS contends that Altschuld's defamation claim "must be dismissed because it is time-barred by the applicable statute of limitations," and it "fails to adequately specify the content or maker of any of the allegedly defamatory statements."  ECF No. 14-1 at 7, 9.  In response, Altschuld has attached a declaration containing additional facts to his opposition, which he argues "overcome[s] Defendants' time-bar defense, because at least one instance of false, damaging statement was made less than a year before the Complaint was filed."  ECF No. 18 at 6.

To state a Maryland defamation claim, a plaintiff must allege:  "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."  *Piscatelli v. Van Smith*, 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotations and citations omitted).  A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule."  *Id.* (internal quotation marks and citations omitted).  In Maryland, the statute of limitations is one year for defamation actions.  Md. Code Ann., Cts. & Jud. Proc. § 5-105.

The complaint alleges that "[a]t the time Defendants discharged Plaintiff or caused him to be discharged, they and

14

their officers, executive committee members and other agents made false and defamatory statements about Plaintiff (including fabricated reasons for his discharge) to third parties." ECF No. 1 ¶ 47. Altschuld was allegedly discharged on August 15, 2012, more than one year before he sued CVS on December 5, 2013. *See* ECF No. 1. Accordingly, Altschuld's defamation claim is barred by the statute of limitations and must be dismissed.[18]

Altschuld seeks to avoid dismissal by stating additional facts in his opposition, and by attaching a declaration that alleges additional facts about a defamatory statement allegedly made less than one year before he filed suit. ECF Nos. 18 at 6, 18-2. He states that these "proffered . . . facts, as if by amended pleading, [] sufficiently apprise Defendants of the claims." ECF No. 18 at 6. "It is axiomatic . . . that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Redding v. Ameriprise Auto & Home Ins.*,

---

[18] Even if Altschuld's defamation claim was not time-barred, he fails to sufficiently allege the content of the allegedly defamatory statements or to whom the statements were published. *See, e.g., Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (dismissing defamation claim when plaintiff failed to plead the content of the statement and when or how the statements were communicated); *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2008 WL 2415035, at *5 (D. Md. June 3, 2008) (dismissing defamation claim when plaintiff failed to allege the content of statements, or to whom they were made). Although Altschuld suggests that he will remedy these failings once he "has an opportunity to learn more through discovery," ECF No. 18 at 5, Altschuld must state a plausible claim for relief before he is entitled to discovery, *see Iqbal*, 556 U.S. at 678-79.

CIV.A. DKC 11-3141, 2012 WL 1268327, at *4 n.6 (D. Md. Apr. 13, 2012) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (internal quotations omitted)); *see, e.g., Presley*, 464 F.3d at 483 ("The purpose of Rule 12(b)(6) is to test the sufficiency of a *complaint*[.]") (emphasis added) (internal quotations and punctuation omitted). However, the Court will construe Altschuld's declaration as a request to amend the complaint and will dismiss his complaint without prejudice to enable him to file an amended complaint.[19] *See generally* Fed. R. Civ. P. 15(a).

### 3. Conspiracy

In Maryland, a civil conspiracy is a "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 290 (2005) (internal quotations omitted). Civil conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154,

---

[19] The Court will defer consideration of CVS's contention that any defamatory statements are protected by a qualified privilege, and that the allegations in the attached declaration are insufficient to state a claim, until the statements have been properly presented. ECF Nos. 14-1 at 10, 20 at 8.

916 A.2d 257, 284 (2007)) (internal quotations omitted). As Altschuld has not stated a wrongful discharge or defamation claim, his conspiracy claim must also fail. *See id.*

III. Conclusion

For the reasons stated above, CVS's motion to dismiss will be granted, and the complaint will be dismissed without prejudice.

_____7/10/14_____  
Date

_____[signature]_____  
William D. Quarles, Jr.  
United States District Judge