IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| GLENN D. ALTSCHULD, | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | CIVIL NO.: WDQ-13-3680 |
|  | * |
| CVS CAREMARK CORPORATION, | * |
| et al., |  |
|  | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Glenn D. Altschuld sued CVS Caremark Corporation ("Caremark"), Maryland CVS Pharmacy, LLC ("Maryland CVS"), and CVS Pharmacy, Inc. ("CVS Pharmacy"), (collectively, "CVS"), for wrongful discharge and other state law claims. ECF No. 25. Pending is CVS's motion to dismiss the amended complaint. ECF No. 26. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion to dismiss will be granted.

I.    Background[1]

In 2007, Altschuld was hired by CVS[2] as a security/risk management officer.  ECF No. 25 ¶ 8.  He was assigned to a CVS store in Baltimore, Maryland (the "Light Street CVS") as a "Loss Prevention Specialist II."  *Id.*  Altschuld received favorable ratings in each of his annual performance reviews.  *Id.* ¶ 9.

On August 7, 2012, Altschuld was conducting camera surveillance of the CVS store and observed Larry Hunter[3] enter the store and examine condoms on the store's shelves.  *Id.* ¶¶ 10-11.  Altschuld and a trainee, Taronne Massey, then left the security office and began to conduct floor surveillance. *See id.* ¶¶ 10, 12.  Altschuld saw Hunter attempt to remove the sealed packaging on a box of condoms; he stopped after he saw that Altschuld and Massey had left the office.  *See id.* ¶ 12.

---

[1] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] CVS is "engaged in the business of selling pharmaceutical drugs, other medicines and other goods and services."  ECF No. 25 ¶ 5.

[3] When he entered the store, Hunter had previously been convicted for narcotics crimes and assault, and had pending charges for, *inter alia*, attempted murder and robbery with a deadly weapon. *Id.* ¶ 27.

Massey walked up to Hunter and attempted to question him. *Id.* ¶ 15. Hunter began to walk away, ignoring Massey's instructions to stop. *Id.* Altschuld joined Massey in attempting to question Hunter.[4] *Id.* ¶ 16. Hunter became belligerent, cursed loudly, and moved toward Massey and Altschuld in a threatening manner. *Id.* ¶ 17. After Hunter yelled "Go ahead and do something," Altschuld instructed him several times to leave the store and threatened to call the police. *Id.* ¶ 18.

Hunter, who appeared to be under the influence of drugs or alcohol, refused to leave the store and continued to shout and move toward Altschuld. *Id.* ¶¶ 19-20. When Hunter was within two or three feet of Altschuld, he clenched his fists, extended his arm as if to punch, and jerked his body quickly toward Altschuld. *Id.* ¶ 20. Altschuld feared for his safety and punched Hunter before Hunter, who was much larger than Altschuld, could strike him. *Id.* ¶ 21. Massey jumped between them, blocking Hunter from moving toward Altschuld. *Id.* ¶¶ 22-23. Hunter continued to yell, curse, and threaten Altschuld. *Id.* ¶ 23. Altschuld told CVS staff to call the police. *Id.* ¶ 24.

---

[4] "Altschuld's employer-issued loss prevention identification badge was displayed on his belt." *Id.* ¶ 16.

Hunter, who had calmed somewhat, agreed to sit in the stockroom and wait for the police. *Id.* ¶ 25. He continued, however, to curse and threaten people in the store. *Id.* ¶ 26. The police arrived and arrested Hunter for trespassing--because he had been previously banned from the store for stealing--and second degree assault. *Id.* ¶ 27.[5] During the investigation and prosecution of Hunter, the State's Attorney determined that Altschuld had acted in self-defense in punching Hunter and did not charge Altschuld for any crime. *See id.* ¶¶ 31, 46.[6]

On August 15, 2012, Stephan Evans, CVS's Regional Cost Prevention Manager, called Altschuld and fired him for using force against Hunter. *Id.* ¶ 32. Altschuld told Evans that he had acted "in self-defense against a criminal who was threatening him and others in the store," and reminded Evans that Evans had previously authorized the use of force when

---

[5] CVS knew that Hunter was a "potentially dangerous individual who frequented the Light Street CVS." *Id.* ¶ 28. However, CVS failed to prevent Hunter from entering the Light Street CVS and posing a threat to staff and customers. *Id.* "Upon information and belief," CVS feared litigation and bad publicity because Hunter is African-American, and was concerned that Hunter--or other "troublemakers"--"might claim that they were being targeted" because of their race. *Id.* ¶ 29.

[6] Altschuld had planned to testify for the State's Attorney until CVS dissuaded him from participating in the case. *Id.* ¶¶ 31, 53.

necessary for self-defense,[7] but Evans refused to change his
decision.  *Id.* ¶¶ 33, 35.

On August 25, 2012, Altschuld spoke to CVS's Human
Resources Business Partner, Dana Fitzgerald, who told Altschuld
that she understood that Altschuld had been the aggressor and
Hunter the "innocent victim." *Id.* ¶¶ 36-37.  After hearing
Altschuld's description of what had occurred, Fitzgerald told
him that "there is no right to self-defense in the workplace,"
and Altschuld "'violate[d CVS's] anti-workplace violence
policy.'"  *Id.* ¶¶ 38-39.  Altschuld told Fitzgerald that he had
used "reasonable, minimally necessary force[,] . . . exactly as
he had been directed to." *Id.* ¶ 40.  Fitzgerald "had no
knowledge" of the Handbook authorizing self-defense. *Id.* ¶ 41.

Altschuld also told Fitzgerald that CVS had tried to
dissuade him from participating in Hunter's prosecution because
it did not want "'legal trouble'" for the Light Street CVS. *Id.*
¶ 42.  In "apparent violation" of CVS policy, Fitzgerald failed

---

[7] CVS's "Market Investigator Program Handbook" (the "Handbook")
also authorized the use of appropriate force in self-defense or
in defense of customers, employees, and others.  *Id.* ¶ 33.
CVS's Handbook, "and the supervisors' explicit instructions,
coupled with their expressed concerns about keeping order at the
Light Street CVS, effectively modified the employment
relationship." *Id.* ¶ 34.  Altschuld's training, coupled with
the Handbook, led him to believe that physical force was
permissible--as necessary--to defend himself and others from
imminent threats of harm. *Id.*

to call Altschuld back with the results of her investigation into his claim.  *Id.* ¶ 43.

Altschuld then sought review of the termination decision "in accordance with the CVS Caremark resolution process."  *Id.* ¶ 44.  In October 2012, CVS corporate employee C.J. Sanders called Altschuld to inform him that the termination decision had been upheld.  *Id.* ¶¶ 44-45.  Sanders acknowledged that CVS policy and training supported the right of reasonable self-defense; however, Sanders stated that because CVS had never provided "expert self-defense training" to store investigators, Altschuld should not have used force against Hunter.  *Id.* ¶ 45.[8]

Two days after the incident with Hunter, Massey--who is African-American--had a physical altercation with a Caucasian customer.  *Id.* ¶ 48.  Massey is still employed by CVS.  *Id.*[9]

CVS, and its officers, executive committee members, and agents, knowingly made false statements--or provided false documents--to third parties about Altschuld, including

_____

[8] Altschuld alleges that "as his internal complaint made its way up the chain of command," CVS and its agents "conspired to fabricate employer policies and procedures . . . to cover-up their known improper actions and protect management officials and [itself] from liability."  *Id.* ¶ 68.

[9] Because Massey was not fired for engaging in the same conduct as Altschuld, Altschuld alleges that CVS fired him "because he [is] white[,] and Hunter [is] a minority."  *Id.* ¶¶ 49, 57.

"fabricated reasons for his discharge." *Id*. ¶¶ 61-63.[10]  These

statements harmed Altschuld's reputation "in the community," at

his former workplace, within CVS and "the industry," and "with

prospective employers." *Id*. ¶¶ 63, 65.  For example, the

Transportation Safety Administration ("TSA") denied his job

application because CVS told TSA that Altschuld was fired for

using improper self-defense.  *Id*. ¶ 64.

On December 5, 2013, Altschuld sued the defendants under

diversity jurisdiction,[11] alleging wrongful discharge,

defamation, and conspiracy.  ECF No. 1.  On July 10, 2014, the

Court granted CVS's motion to dismiss the complaint, but granted

Altschuld the opportunity to amend.  ECF Nos. 23, 24.  On July

---

[10] CVS suggested to third parties that Altschuld had "violated
company policy against security staff using self-defense, . . .
and may have committed a crime."  *Id*. ¶ 62.

[11] Diversity jurisdiction requires complete diversity, and an
amount in controversy exceeding $75,000.  *See Wisconsin Dep't of
Corr. v. Schacht*, 524 U.S. 381, 388 (1998); 28 U.S.C.
§ 1332(a)(1).  Altschuld is a citizen of Maryland and seeks more
than $75,000 in damages.  ECF No. 25 at 1, 11-15.  Caremark and
CVS Pharmacy are corporations with the citizenship of their
state of incorporation, Delaware, and the state where their
principal place of business is located, Rhode Island.  *Id*. ¶¶ 2,
4; § 1332(c)(1); *Cent. W. Virginia Energy Co., Inc. v. Mountain
State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011).  CVS
Maryland, a limited liability company, has the citizenship of
its sole member, CVS Pharmacy.  *See Gen. Tech. Applications,
Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004).
Accordingly, there is complete diversity, and the Court has
jurisdiction over this dispute.

24, 2014, Altschuld amended his complaint.  ECF No. 25.[12]  On

August 8, 2014, CVS moved to dismiss the amended complaint.  ECF

No. 26.  On August 26, 2014, Altschuld opposed the motion.  ECF

No. 28.[13]  On September 8, 2014, CVS replied.  ECF No. 30.

II.  Analysis

A.  Legal Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action

may be dismissed for failure to state a claim upon which relief

may be granted.  Rule 12(b)(6) tests the legal sufficiency of a

complaint, but does not "resolve contests surrounding the facts,

the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006).

The Court bears in mind that Rule 8(a)(2) requires only a

"short and plain statement of the claim showing that the pleader

is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l,*

*Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff

must allege facts that support each element of the claim

advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,

---

[12] The amended complaint includes the following Maryland state
law claims: wrongful discharge (Counts One and Two), defamation
(Count Three), and conspiracy (Count Four).  ECF No. 25.

[13] Altschuld incorporated by reference his opposition to CVS's
motion to dismiss the original complaint, ECF No. 18.  *See* ECF
No. 28 at 1.

764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B.   Altschuld's Claims

1.   Wrongful Discharge

In Maryland, an at-will employee may raise a wrongful discharge claim only if his termination violated a "clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981).  To state a claim for wrongful discharge, a plaintiff must show: "(1) that [he] was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and

9

the decision to fire [him]." *Shapiro v. Massengill*, 661 A.2d 202, 213 (Md. Ct. Spec. App. 1995). The complaint "must plead with particularity the source of the public policy and the alleged violation."[14] *Porterfield v. Mascari II, Inc.*, 142 Md. App. 134, 140, 788 A.2d 242, 245 (2002) *aff'd*, 374 Md. 402, 823 A.2d 590 (2003) (*citing Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 477, 588 A.2d 760 (1991)). Ordinarily, the plaintiff must show that the employer "violated the legal rule at issue[,] punished the employee for exercising some legal right[,]" or discharged the employee for "refusing to violate the law, or . . . the legal rights of some third party." *McIntyre v. Guild, Inc.*, 105 Md. App. 332, 344, 659 A.2d 398, 404 (1995).

> a.   Self-Defense Against a Criminal Act

CVS argues that Count One should be dismissed because "there is no clear mandate of public policy recognizing the right of self-defense so as to support a wrongful discharge claim." ECF No. 26-1 at 8. Altschuld acknowledges the Court's

---

[14] To form the basis of a wrongful discharge action, "there must be a preexisting, unambiguous, and particularized pronouncement, by *constitution, enactment, or prior judicial decision*, directing, prohibiting, or protecting the conduct in question." *King v. Marriott Inter. Inc.*, 160 Md. App. 689, 702, 866 A.2d 895, 903 (2005) (internal quotations and citations omitted) (emphasis added); *see also Wholey v. Sears Roebuck*, 370 Md. 38, 52, 803 A.2d 482, 490 (2002) ("[W]e must strive to confine the scope of public policy mandates to clear and articulable principles of law . . . .").

earlier ruling that Md. Code Ann., Cts. & Jud. Proc. § 5-808 (West 2010), did not establish a statutory mandate supporting the right to self-defense; however, Altschuld contends that the "narrow exception" adopted in *Staggs v. Blue Cross of Md.*, 486 A.2d 798 (1985), whereby at-will employment may be modified by an employer's policies, applies in his case. ECF No. 28 at 3. CVS argues that *Staggs* involved a breach of contract claim and is inapplicable here. ECF No. 30 at 2.

The amended complaint alleges that CVS terminated Altschuld "for exercising his lawful right or obligation to defend himself, customers and other employees," and "took action" against him to "dissuade or prevent him from assisting the State's Attorney" to prosecute Hunter. ECF No. 25 ¶¶ 52-53. An incomplete sentence in the fact section of the amended complaint suggests that § 5-808 underlies, at least in part, a "public policy" barring termination in this situation. *Id.* ¶ 34.[15]

Section 5-808(b) provides that:

A person is not liable for damages for a personal injury or death of an individual who enters the person's dwelling or place of business if: (1) The person reasonably believes that force or deadly force is necessary to repel an attack by the individual; and (2) The amount and nature of the force used by the person is reasonable under the circumstances.

---

[15] That sentence reads, "Under the circumstances, including Maryland public policy as reflected in Section 5-808 of the Courts & Judicial Proceedings Article of the Maryland Code." ECF No. 25 ¶ 34.

Altschuld alleges that he used reasonable force against Hunter,
and that he reasonably believed this use of force was necessary
to protect himself from Hunter's attack. *See, e.g.*, ECF No. 25
¶¶ 20-21, 33.

This Court previously held that § 5-808 did not establish a
public policy barring an employer from discharging an employee
for using force in self-defense. *See* ECF No. 23 at 13.[16]  To
overcome the Court's holding, Altschuld further alleges that the
Handbook authorizing reasonable self-defense, along with his
training and supervisor's instructions, "effectively modified
the employment relationship." *Id.* ¶ 34.  Although arguably
unclear, Altschuld suggests that § 5-808, when considered in
conjunction with the at-will employment exception adopted in
*Staggs*, "should shift the Court's analysis of the claim."  ECF
No. 28 at 3.

In *Staggs*, former employees sued Blue Cross of Maryland,
Inc. ("Blue Cross"), for breach of contract, alleging that Blue
Cross's personnel policies on terminating employment had become
contractual obligations, which Blue Cross violated when it
terminated plaintiffs' employment, 486 A.2d at 799-800.[17]  The

---

[16] *See also Altschuld v. CVS Caremark Corp.*, No. CIV. WDQ-13-
3680, 2014 WL 3422003, at *4 (D. Md. July 10, 2014).

[17] Blue Cross's personnel policies provided that, "[e]xcept in
extreme cases," employees will receive "at least two formal
counseling sessions . . . before final dismissal." *Staggs*, 486

Maryland Court of Special Appeals held that "provisions in such policy statements that limit the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." *Id.* at 803. However, the Court cautioned that "not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Id.* at 804. "The purpose of the *Staggs* exception to the at[-]will doctrine is to protect the legitimate expectations of employees who have justifiably relied on manual provisions precluding job termination except for cause." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 308-09 (Md. Ct. Spec. App. 1995) (*quoting Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786, 794 (Md. Ct. Spec. App. 1986)).[18]

---

A.2d at 799. Two plaintiffs were permitted to resign in lieu of dismissal; one plaintiff was fired. *See id.*

[18] The plaintiff in *Bagwell*--a hospital security officer--had struck a violent patient on the head after the patient bit him. *Id.* at 303. The plaintiff alleged that the defendant breached the provisions in its handbook--which "promise[d the plaintiff] an opportunity to conform his conduct to [the defendant's] expectations"--when it fired him without "issuing a written warning or taking some other disciplinary action short of discharge." *Id.* at 308. However, the defendant's handbooks contained a disclaimer, which stated that it "should not be treated as a contract in any way." *Id.* at 309. Because "[j]ustifiable reliance [on manual provisions] is precluded

Both *Staggs* and *Bagwell* applied the "narrow exception" to at-will employment to breach of contract claims--they did not establish public policies applicable to wrongful discharge claims. Further, Altschuld has not alleged--nor explained in his opposition--the extent to which his employment was purportedly modified by CVS's written and oral authorizations to act in self-defense, or whether the authorization limited CVS's right to fire him. Altschuld argues that CVS was aware that "known trespassers, thieves, and violent criminals" would enter the Light Street CVS, and--through the Handbook and other directives--"trained and directed Altschuld" to maintain store security. ECF No. 28 at 3. However, "[a]n employer's general statements of policy are no more than that," and do not necessarily give rise to contractual obligations. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn. 1983) (*quoted in Staggs*, 486 A.2d at 804).[19] Altschuld has not demonstrated a public policy supporting the right of self-defense with the

---

where, as in the case at hand, contractual intent has been expressly disclaimed," the Court affirmed summary judgment for the defendant. *Id.* (*quoting Castiglione*, 517 A.2d at 786).

[19] *Cf. Blanch v. Chubb & Son, Inc.*, No. CIV. CCB-12-1965, 2012 WL 5471224, at *5 (D. Md. Nov. 8, 2012) (an employer's violation of its own policies does not support a wrongful discharge claim "because a private company's own employment policies do not constitute a clear mandate of public policy").

14

requisite "clarity, specificity, and authority." *Bagwell*, 665
A.2d 297, 309.[20]

Finally, Altschuld's allegation that CVS dissuaded him from
assisting the State's Attorney fails to save his claim.  Again,
Altschuld fails to plead the source of the public policy to
which this allegation pertains.  "[R]ecognition of an otherwise
undeclared public policy as a basis for a judicial decision
involves the application of a very nebulous concept to the facts
of the case," *Lee v. Denro, Inc.*, 605 A.2d 1017, 1021 (Md. Ct.
Spec. App. 1992), and "should be employed sparingly, if at all,"
*Bagwell*, 665 A.2d at 310; *see also Luy v. Baltimore Police
Dep't*, 326 F. Supp. 2d 682, 691-92 (D. Md. 2004) *aff'd,* 120 F.
App'x 465 (4th Cir. 2005) (allegations that "defendants
wrongfully terminated [plaintiff] in violation of public policy,
by fabricating charges against him and not providing him with an
opportunity to be heard" failed to "specifically identify any
public policy").  Accordingly, CVS is entitled to dismissal of
Count One.

---

[20] *Cf. Wholey*, 803 A.2d at 492-96 (statute that criminalized
harming or retaliating against a person who reported a crime to
law enforcement established a clear mandate of public policy to
support a civil wrongful discharge claim for an employee
discharged by his employer for reporting a crime to law
enforcement); *Bleich v. Florence Crittenton Servs. of Baltimore,
Inc.*, 632 A.2d 463, 470-71 (Md. Ct. Spec. App. 1993) (educator
discharged for reporting child abuse when specifically required
to do so by Maryland law had stated a wrongful discharge claim).

b.     State Govt. § 20-602

CVS argues that Count Two should be dismissed because § 20-602 provides a civil remedy for employment discrimination, thereby barring Altschuld's reliance on that statute to sustain a wrongful discharge claim.  ECF No. 26-1 at 10.  Altschuld argues that "Maryland's highest [court] does not agree."  ECF No. 28 at 4 (*citing Molesworth v. Brandon*, 672 A.2d 608, 613 (1996), for the proposition that, to establish wrongful discharge, "the anti-discrimination policy applies . . . regardless . . . of whether the claimant seeks or could seek relief pursuant to the statute").[21]  CVS asserts that Altschuld

---

[21] Altschuld further argues that "the claim is not purely one of discriminatory discharge," but that "Maryland's public policy prohibiting racial bias affords Altschuld the right to claim wrongful discharge" when he was terminated for performing his expected duties, CVS "circled the proverbial wagons around a fabricated excuse for termination," and failed to provide a proper appeals process, all of which were "driven by CVS's apparent racial bias."  ECF No. 28 at 5.  However, Count Two's title--"Violation of Public Policy/Md. Code Ann., State Government Art., § 20-602"--and text indicate that Altschuld relies on § 20-602 to supply the clear mandate of public policy ostensibly barring his dismissal.  *See* ECF No. 25 at 11. Accordingly, the Court will determine whether § 20-602 provides the requisite public policy, and not some other--unspecified--source.  *See Porterfield*, 788 A.2d at 245 (the source of the public policy must be pled with particularity); *Murphy v. Republic Nat. Distrib. Co., LLC.*, No. CIV. JFM-13-2758, 2014 WL 4406880, at *4-5 (D. Md. Sept. 5, 2014) (refusing to consider "additional sources of Maryland public policy beyond those explicitly identified by the second amended complaint [including § 20-602]" when plaintiff did not "provide any case, statute or regulation . . . that would permit the court to concretely identify the clear, pre-existing mandate of public policy to which he alludes") (internal quotation marks omitted).

"gross[ly] mischaracteriz[es]" and misapplies *Molesworth*.   ECF
No. 30 at 4-5.

Count Two alleges that CVS fired Altschuld "because he was
white," which was "inconsistent with Maryland law and public
policy, including[,] but not necessarily limited to[, § 20-602].
ECF No. 25 ¶¶ 57-58.

Section 20-602 provides:

It is the policy of the State . . .

   (1)   to assure all persons equal opportunity in receiving
        employment and in all labor management-union
        relations, regardless of race, color, religion,
        ancestry or national origin, sex, age, marital status,
        sexual orientation, gender identity, or disability
        unrelated in nature and extent so as to reasonably
        preclude the performance of the employment; and

   (2)   to that end, to prohibit discrimination in employment
        by any person.

Md. Code Ann., State Govt. § 20-602 (West 2010).

In *Molesworth*, the Maryland Court of Appeals held that
"Art. 49B, § 14[22] provides a clear statement of public policy
sufficient to support a common law cause of action for wrongful
discharge against an employer *exempted by* Art. 49B, § 15(b),"
672 A.2d at 616 (emphasis added).   Article 49 B, § 15(b)

---

[22] Former Maryland Code Art. 49B, § 14 preceded § 20-602. *See*
§ 20-602, Legislative Notes.   The last sentence in § 14 differed
from § 20-602, in that it prohibited discrimination not just "by
any person," but by "any person, group, labor organization,
organization or any employer or his agents."   *See Molesworth*,
672 A.2d at 612.   However, "employer" is merely one type of
"person," *see* §§ 1-101(d), 20-601(d)(1)(i); thus, the change in
language does not affect the outcome here.

exempted employers with less than 15 employees from the
administrative processes stated in the Maryland Fair Employment
Practices Act ("MFEPA").  *See id.* at 612.[23]  Because the
plaintiff in *Molesworth* could not avail herself of MFEPA's
administrative remedy, the Court held that she could pursue a
wrongful discharge claim under the policy stated in § 14.  *See
id.* at 616.

    *Molesworth* distinguished *Makovi v. Sherwin-Williams Co.*,
561 A.2d 179 (Md. 1989), wherein "the common law cause of action
[for wrongful discharge] was not available" because "the
employer had a sufficient number of employees, [and, thus,] the
statute provided the plaintiff with both a right and a remedy."
*Molesworth*, 672 A.2d at 616.  Accordingly, in *Molesworth*, "the
generally accepted reason for recognizing the tort, that of
vindicating an otherwise civilly unremedied public policy
violation, [did] not apply."  *Id.*  *Cf.*  *Norville v. Anne Arundel
Cnty. Bd. of Educ.*, 862 A.2d 477, 516 (Md. Ct. Spec. App. 2004)
*vacated on other grounds*, 887 A.2d 1029 (2005) (distinguishing
*Molesworth*, and holding that, when plaintiff had access to
statutory remedy under Art. 49B, "he [could not] pursue a common
law wrongful discharge claim").

---

[23] Similarly, Art. 49B, § 15(b) preceded § 20-601(d)(1).  *See*
§ 20-601, Legislative Notes.

Here, there is no allegation that CVS has less than 15 employees, thus rendering it exempt from the MFEPA's enforcement provisions. *See* §§ 20-602, 20-1013. Under these circumstances, § 20-602 "cannot form the basis for an abusive discharge claim." *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 443 n.6 (D. Md. 2012)(§ 20-602 "provides [an] administrative . . . remed[y], and therefore the policies underlying th[is] statute[] cannot form the basis of an abusive discharge claim"); *Murphy*, 2014 WL 4406880, at *4 (D. Md. Sept. 5, 2014)("Unfortunately for Murphy, § 20-602 cannot satisfy the public policy requirement of a wrongful discharge claim" because "§ 20-602 . . . has its own enforcement provision"). Accordingly, CVS is entitled to dismissal of Count Two.

2. Defamation

CVS argues that Altschuld's defamation claim fails because he has not adequately alleged the identity of the maker of the allegedly defamatory statements, or the statement's exact content. ECF No. 26-1 at 12-13. CVS further argues that any allegedly defamatory statements are subject to statutory and common law privilege. *Id.* at 13-15. Altschuld argues that "[u]ntil [he] has an opportunity to learn more through discovery, he only knows certain facts and circumstances regarding the allegedly defamatory statements," and that "at

least one of the Defendants [or a supervisor] . . . made untrue statements" about him.  ECF No. 28 at 6.

To state a Maryland defamation claim, a plaintiff must allege: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Piscatelli v. Van Smith,* 424 Md. 294, 306, 35 A.3d 1140, 1147 (2012) (internal quotations and citations omitted).  A statement is defamatory if it "tends to expose a person to public scorn, hatred, contempt, or ridicule." *Id.* (internal quotation marks and citations omitted).  Altschuld bears the burden of proving falsity.  *See Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992).

Altschuld alleges that CVS "made or provided false and defamatory statements or documents about [Altschuld] to third parties," including the TSA.  ECF No. 25 ¶¶ 61, 64.  The statements included "fabricated reasons for his discharge, such as suggesting that he violated company policy against security staff using self-defense," and "may have committed a crime." *Id.* ¶ 62.  Altschuld further alleges that CVS defamed him when it informed TSA that "he was fired for improperly using self-defense" at the Light Street CVS, although the Handbook "authorized self-defense and [CVS] knew this."  *Id.* ¶ 64.

To prevail on a defamation claim, plaintiffs must carry a

"substantial factual and constitutional burden . . . to prove

liability." *Brown v. Ferguson Enterprises*, Inc., No. CIV. CCB-

12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012)

(statements suggesting that plaintiffs had engaged in fraudulent

conduct by conducting a "claim back scheme" were insufficiently

descriptive of content); *Skillstorm, Inc. v. Elec. Data Sys.,*

*LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009) (allegation that

defendant "made false statements to the Navy regarding

[plaintiff's] role in [an] incident and that [defendant] falsely

stated to [plaintiff's] employees that [plaintiff] was solely

responsible for the incident and was therefore an irresponsible

contractor" failed to provide requisite specificity).

Altschuld's vague reference to "fabricated reasons for his

discharge," allegedly communicated to "third parties," fails to

sufficiently allege the content of the allegedly defamatory

statements or to whom the statements were published.[24]

---

[24] Once again Altschuld suggests that he will remedy these
failings once he "has an opportunity to learn more through
discovery," ECF No. 28 at 5; however, Altschuld must state a
plausible claim for relief before he is entitled to discovery,
*see Iqbal*, 556 U.S. at 678-79.  Altschuld's opposition
identifies the State's Attorney as one recipient of the
allegedly defamatory statements.  ECF No. 28 at 6.  However,
"the complaint may not be amended by the briefs in opposition to
a motion to dismiss."  *Redding v. Ameriprise Auto & Home Ins.*,
CIV.A. DKC 11-3141, 2012 WL 1268327, at *4 n.6 (D. Md. Apr. 13,
2012) (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d
1101, 1107 (7th Cir. 1984) (internal quotations omitted)); *see,*

As to Altschuld's allegation that CVS defamed him when it informed TSA that "he was fired for improperly using self-defense," ECF No. 25 ¶ 64, the statement appears to be true, *see id.* ¶¶ 32, 38, 39, 45 (alleging, *inter alia*, that Altschuld was fired for using inappropriate force against Hunter).  "[A] true statement cannot support an action for defamation."  *See Gladhill v. Chevy Chase Bank, F.S.B.*, No. 905 Sept. Term 2000, 2001 WL 894267, at *10 (Md. Ct. Spec. App. Aug. 1, 2001) (*citing Batson*, 602 A.2d at 1212).

Had the defamation claim been adequately alleged, it would be barred by a statutory and common law qualified privilege. Md. Code Ann., Cts. & Jud. Proc. § 5-423 (West 2010); *Gohari v. Darvish*, 767 A.2d 321 (2001).  Under § 5-423(a), "[a]n employer acting in good faith may not be held liable for disclosing any information about . . . the reason for termination of an employee or former employee" when the information is disclosed "[t]o a prospective employer of the employee or former employee at the request of the prospective employer, the employee, or former employee." § 5-423(a).  This is the situation here.

---

*e.g.*, *Presley*, 464 F.3d at 483 ("The purpose of Rule 12(b)(6) is to test the sufficiency of a *complaint*[.]") (emphasis added) (internal quotations and punctuation omitted).  The Court previously provided Altschuld an opportunity to amend his complaint to properly present his defamation claim; it will not do so again.

Further, an employer is "presumed to be acting in good faith unless it is shown by clear and convincing evidence that the employer: (1) [a]cted with actual malice toward the employee or former employee; or (2) [i]ntentionally or recklessly disclosed false information about the employee or former employee."  § 5-423(b).  Although Altschuld argues that the privilege does not protect "stating known falsehoods" to prospective employers, or "for the purpose of covering up the truth about [his] training, the incident that led to his termination," and his appeal, ECF No. 28 at 7, he does not allege facts supporting a finding of actual malice or intentional or reckless disclosure.  Accordingly, CVS is entitled to dismissal of the defamation claim.  *See Brown*, 2012 WL 6185310, at *4 (dismissing defamation claim when employer's statements that former employees were "cooking the books," "cheating," and "embezzling," were substantially correct, and "likely subject to a conditional privilege under Maryland law").[25]

---

[25] *See also Frank v. Home Depot, U.S.A., Inc.*, 481 F. Supp. 2d 439, 443 (D. Md. 2007) (granting summary judgment for defendant on defamation claim when plaintiff merely alleged falsity, and offered no evidence of actual malice or intentional or reckless disclosure); *Deutsch v. Chesapeake Ctr.*, 27 F. Supp. 2d 642, 644-45 (D. Md. 1998) (statement that plaintiff "was terminated because of difficulties in the areas of sexual harassment and racial discrimination" was "clearly barred" by Maryland's "conditional privilege to communicate information concerning a former employee to a prospective employer").

### 3.   Conspiracy

In Maryland, a civil conspiracy is a "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 290 (2005) (internal quotations omitted).   Civil conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."   *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154, 916 A.2d 257, 284 (2007)) (internal quotations omitted). Because Altschuld has not stated a wrongful discharge or defamation claim, his conspiracy claim must also fail.   *See id.*

### III. Conclusion

For the reasons stated above, CVS's motion to dismiss the amended complaint will be granted.


___2/24/15___

Date

_____

William D. Quarles, Jr.
United States District Judge